IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

16 OCT -3 PM 2: 04

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

GREEN VALLEY SPECIAL UTILITY
DISTRICT,
                    **Plaintiff,**

-vs-                                    **Case No.  A-16-CA-627-SS**

CITY OF CIBOLO, TEXAS,
                    **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant's Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) [#13], Plaintiff's Response [#15] in opposition, and Defendant's Reply [#16] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion to dismiss.

Plaintiff Green Valley Special Utility District (Green Valley) brings this suit against Defendant, the City of Cibolo, Texas (the City), claiming the City is attempting to illegally provide sewer service to customers within Green Valley's certified district. *See* Am. Compl. [#12] ¶ 10. Green Valley has a loan to fund its water service from the United States Department of Agriculture (USDA) under 7 U.S.C. § 1926, which is secured by revenues from that same water service. *See id.* ¶ 6.

Earlier in this case, this Court interpreted "[t]he service" in § 1926(b) to refer to an association's funded service. *See* Order [#9]. Because Green Valley failed to plead which service is funded by federal loan, the Court dismissed Green Valley's Original Complaint but granted leave to



amend. *See id.* Green Valley has now filed an Amended Complaint, clarifying it received federal funds for its water service, not its sewer service. *See* Am. Compl. ¶ 9. The City filed a motion to dismiss in reaction. The Court finds Green Valley cannot establish a cause of action under § 1926(b) to protect its sewer service, a service for which it has not used federal funds. Thus, the Court dismisses Green Valley's Amended Complaint with prejudice because further amendment would be futile.

Although the Court previously recounted the facts of this case, we must begin again at the beginning: a summary of the facts, drawn from the Amended Complaint and recounted in the light most favorable to Plaintiff, follows.

I.      **Background**

A.      **Factual History**

Both state and federal law govern the right to sell water and sewer services to the public in Texas. The Texas Public Utility Commission (PUC) issues applicants Certificates of Convenience and Necessity (CCNs), which grant exclusive rights to provide water or sewer utility services to a specified geographic area.

In addition, 7 U.S.C. § 1926(a) authorizes loans and grants to nonprofit associations that provide water and sewer services in rural areas. 7 U.S.C. § 1926(a). With this statute, Congress intended to create a "very effective program of financing the installation and development of domestic water supplies and pipelines serving farmers and others in rural communities." S. Rep. No. 87-566, *as reprinted in* 1961 U.S.C.C.A.N. 2243, 2309. To protect these indebted associations, Congress included the following provision:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the

boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

Green Valley provides water and sewer services to a rural area covering parts of Guadalupe, Comal, and Bexar Counties. *See* Am. Compl. [#12] ¶ 1. Green Valley has two CCNs allowing it to provide water and sewer services to the area. *See id.* ¶ 5. Green Valley also has an outstanding loan from the USDA to fund its water service, secured by revenues from the same water service. *See id.* ¶¶ 6, 9.

The City filed an application under Texas Water Code § 13.255 to obtain a CCN for the right to provide sewer service in an area that overlaps with Green Valley's sewer service. *See id.* ¶ 7. In its application, the City also requested the decertification of Green Valley, which would prevent Green Valley from providing sewer service in the overlapping area. *See id.* Green Valley claims the City's application violates § 1926(b). *See id.* ¶ 13.

## B.     Procedural History

This Court dismissed Green Valley's Original Complaint. *See* Order [#9]. In evaluating that complaint, the Court conducted a thorough analysis of "the service provided or made available" as defined under § 1926(b). *Id.* at 4–10. Interpreting the statute in light of its statutory and regulatory context, the Court concluded § 1926(b) refers to the funded service and not other, ancillary services an association may provide. *Id.* Because Green Valley failed to plead which of its services, water or sewer, is funded by federal loan, the Court granted the City's Motion to Dismiss but also gave leave for Green Valley to amend its complaint. *Id.* at 10.

Green Valley returns with an Amended Complaint, explaining the federal loan funds its water service and is secured by the water service revenues. Again, the City moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). Green Valley responds, asking the Court to "reconsider its construction of [§] 1926(b) . . . ." *See* Pl.'s Resp. [#15] ¶ 1.

## II.    Legal Standard

A motion under Rule 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). A court, however, is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other

-4-

sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Although leave to amend a complaint is to be freely given under Rule 15(a), a district court may deny leave to amend after considering factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). If a plaintiff has had fair opportunity to make its case and a cause of action has not been established, the court should finally dismiss the suit. *Id.* at 567.

### III.   Analysis

Green Valley's ability to state a claim in this case hinges on whether its sewer service is protected under 7 U.S.C. § 1926(b). This Court interprets § 1926(b) to safeguard only the type of service funded by federal loan, not ancillary services an association may also provide. Because Green Valley "acknowledges that proceeds from its federal loan were used . . . only in connection with its water system" but nevertheless seeks protection for its sewer service, the Court finds Green Valley has failed to state a claim.

As previously noted, this Court determined the meaning of "the service provided or made available" under § 1926(b) when it evaluated the prior motion to dismiss. Here, Green Valley spends the majority of its response to the City's Motion to Dismiss arguing this Court's prior order was incorrect. In particular, Green Valley argues the Court should interpret § 1926(b)'s protections to apply to "any service" an association provides if the association receives a federal loan because (1) the plain language of the statute does not limit protection to the funded service; (2) the Court's

interpretation of the singular term "service" is inapplicable where a federal loan funds more than one service; (3) this Court's interpretation contradicts Fifth Circuit precedent endorsing a liberal interpretation of the statute; (4) a broader interpretation better serves the statute's purposes; and (5) the Court should refrain from legislating by judicial mandate.

The Court finds none of Green Valley's arguments regarding the interpretation of § 1926(b) more persuasive the second time around. Green Valley continues to urge a broader reading of § 1926(b), but this Court declines to expand the definition of "the service" beyond the funded service, the construction most directly suggested by § 1926(b) and its context.

## A.    Plain Language

As discussed in this Court's prior order, because no court within the Fifth Circuit has interpreted "the service provided or made available" and the plain language of the statute is not instructive, this Court turns to the statute's context, both statutory and regulatory, and the purposes behind its enactment. *See United States v. Uvalle-Patricio,* 478 F.3d 699, 703 (5th Cir. 2007) (noting interpretation of a statute begins with the statute's plain language); *Pub. Water Supply Dist. No. 3 v. City of Lebanon,* 605 F.3d 511, 519 (8th Cir. 2010) (looking at the plain language of § 1926(b) and finding the language provided "little insight into the interpretive question"). While Green Valley claims § 1926(b) "unambiguously states that any 'service provided or made available' through any federally indebted association" should be protected, Green Valley misstates the plain language of § 1926(b). Pl.'s Resp. [#15] ¶ 2. The exact language of the statute specifies "*[t]he* service provided or made available" is eligible for § 1926(b)'s shield. § 1926(b) (emphasis added). Green Valley's argument *any* service should be protected ignores the definite article in front of service. And although the plain language of the statute does demonstrate § 1926(b) intended to safeguard a specific service,

-6-

it does not resolve the issue of *which* service.

**B.     Statutory Context**

The conclusion § 1926(b) protects a specific service is further bolstered by the statute as a whole, specifically Congress's use of the singular rather than the plural. *See United States v. Morton,* 467 U.S. 822, 828 (1984) ("We do not . . . construe statutory phrases in isolation; we read statutes as a whole."). As previously analyzed by this Court, because Congress used "service" and "services" throughout the statute, "the service provided or made available" was not intended to mean all services an association may provide. *Compare* 7 U.S.C. § 1926(b) *with* 7 U.S.C. § 1926(a)(20)(E) (describing a grant program for "cable operators that establish common carrier facilities and *services*") (emphasis added); *see also Pub. Water Supply,* 605 F.3d at 520 ("Read *in pari materia* with 7 U.S.C. § 1926(a), Congress's pattern of using the singular to refer to a single type of service while using the plural to refer to a collection of multiple types of services is decisive.").

Responding to this conclusion, Green Valley claims the Court's interpretation of "service" to mean the funded service is unsuitable where a federal loan funds more than one service. Pl.'s Resp. [#15] ¶ 4. But Green Valley's argument fails to understand the Court is not interpreting service under § 1926(b) to mean one, singular service. *See* Order [#9] at 7–8. Instead, the Court construes service as a category, the type of service financed by a qualifying federal loan. *Id.* An association may have multiple funded services, all of which would benefit from § 1926(b)'s protection. But that is not the case here as Green Valley's sewer service is not federally funded. *See* Am. Compl. [#12] ¶ 9. Thus, the Court concludes the statutory context supports finding § 1926(b) protects a definitive type of service, the funded service.

C.    **Policy**

This Court's interpretation of the statute also conforms to the policy goals of § 1926. Green Valley disagrees, arguing this Court's interpretation contradicts the Fifth Circuit's directive in *North Alamo* to liberally interpret § 1926(b) to protect indebted water associations from municipal encroachment. Pl.'s Resp. [#15] ¶¶ 5–6 (citing *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915 (5th Cir. 1996)). Under the Fifth Circuit's precedent, according to Green Valley, § 1926(b) should be extended to shield all of an association's services from encroachment. *Id.* Green Valley's interpretation of § 1926(b), however, stretches the statute and the Fifth Circuit's prior decision too far.

For context, in *North Alamo* the Fifth Circuit observed "[e]very federal court to have interpreted § 1926(b) has concluded that the statute should be liberally interpreted to protect FmHA-indebted rural water associations from municipal encroachment." 90 F.3d at 915. The Fifth Circuit did not, as Green Valley seems to advocate, establish a directive mandating a liberal interpretation favoring the indebted association in every case. *See id.* Furthermore, other courts have recognized limits on liberally interpreting § 1926(b) after considering the entirety of the statute and its objectives. *See Scioto Cty. Reg'l Water Dist. No. 1 v. Scioto Water Inc.*, 103 F.3d 38, 41–42 (6th Cir. 1996) (finding an association is no longer entitled to § 1926(b) protection if it has repaid its federal debt); *Pub. Water Supply,* 605 F.3d 520–21 (limiting an association's § 1926(b) shield to the financed service).

Thus, like the Fifth Circuit in *North Alamo*, this Court looks to the objectives underlying § 1926(b) rather than merely applying a liberal interpretation as a general rule. *See N. Alamo*, 90 F.3d at 915. The Fifth Circuit explained the two purposes behind § 1926(b): "(1) to encourage rural water

-8-

development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and (2) to safeguard the viability and financial security of such associations (and FmHA's loans) by protecting them from the expansion of nearby cities and towns." *Id.* Considered together, these two purposes support viewing § 1926(b) as protecting the very service the federal government sought to encourage. Furthermore, § 1926's purposes show the statute as a whole was primarily intended to encourage rural development. Expanding § 1926(b) to grant an association monopoly power over all services it might provide could discourage rural development by stymieing the growth of other service providers, potentially undermining the purposes of § 1926.

By contrast, Green Valley claims a broader interpretation of § 1926(b)'s protections better aligns with the statute's purposes, especially because Green Valley administers an "integrated service area." Pl.'s Resp. [#15] ¶ 11 (citing Am. Compl. ¶ 21). Green Valley argues any reduction in its integrated water and sewer services will decrease its revenues, damage its viability and financial security, and therefore defeat the statute's purpose. *Id.* But how far should a court go to safeguard an association's revenues? Should it shelter every auxiliary service an association provides? No, to expand § 1926(b)'s protection to services unconnected with the federal loan overextends the statute. *See Pub. Water Supply,* 605 F.3d at 521 ("In short, divorcing the type of service underlying [an association's] qualifying federal loan from the type of service that § 1926(b) protects would stretch the statute too far.").

Although Green Valley complains this Court should refrain from legislating by judicial mandate, this Court avoids that very misstep. Rather than create a new application for § 1926(b), this Court's interpretation of "the service" as the funded service remains within the confines of the statute and its purposes. Consequently, because Green Valley has not received federal funds for its sewer

service, the Court finds Green Valley cannot establish a cause of action under § 1926(b) and Green Valley's Amended Complaint should be dismissed.

## IV.    Conclusion

For all the foregoing reasons, the Court GRANTS the City's Motion to Dismiss. Although leave to amend a complaint is to be freely given, here additional amendment of the complaint would be futile. Because the Court determined § 1926(b) protects an association's funded service, Green Valley cannot establish a cause of action to protect its sewer service, a service for which it has not used federal funds. Thus, Green Valley's Amended Complaint must be dismissed WITH PREJUDICE.

Accordingly:

IT IS ORDERED that Defendant's Motion to Dismiss [#13] is GRANTED; and

IT IS FINALLY ORDERED that all claims brought by Plaintiff in this case are DISMISSED WITH PREJUDICE.

SIGNED this the _3rd_ day of ~~September~~ October 2016.


_Sam Sparks_
_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-