| | | |
|---|---|---|
| GREEN VALLEY SPECIAL UTILITY DISTRICT, Plaintiff, | § § § § | |
| vs. | § § | |
| CITY OF CIBOLO, TEXAS; PETER LAKE, WILL McADAMS, LORI COBOS, JIMMY GLOTFELTY, and KATHLEEN JACKSON, in their official capacities as Commissioners of the Public Utility Commission of Texas; THOMAS GLEESON, in his official capacity as Executive Director of the Public Utility Commission of Texas, and WAYNE REED, in his official capacity as City Manager of the City of Cibolo, Texas, Defendants. | § § § § § § § § § § § § | Civil Action No. 1:16-cv-00627-SS |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

NOW COMES Green Valley Special Utility District ("Green Valley SUD," "Green Valley," or "Plaintiff"), and files this its Third Amended Complaint against Defendant Thomas Gleeson in his official capacity as Executive Director of the Public Utility Commission of Texas and Defendants Peter Lake, Will McAdams, Lori Cobos, Jimmy Glotfelty, and Kathleen Jackson in their official capacities as Commissioners of the Public Utility Commission of Texas (collectively, the "PUC Defendants") and against the City of Cibolo, Texas and Wayne Reed in his official capacity as City Manager of the City of Cibolo, Texas (collectively, the "Cibolo Defendants"), and respectfully states and alleges as follows.

### Introduction

1.      Green Valley SUD is a federally-indebted rural utility that provides water and wastewater service to a very large service area covering parts of several counties. 7 U.S.C. § 1926(b) prevents cities and other governmental entities from stealing the customers of

federally-indebted rural utilities. The provisions of § 1926(b) must be liberally construed to protect the federal civil rights of these federally-indebted utilities. In violation of those rights, the City of Cibolo has consistently sabotaged, interfered with, and harmed Green Valley SUD's provision of wastewater service to its customers in its federally-protected service area. The Cibolo Defendants have stolen Green Valley's service area and customers, filed bogus "protests" of its permit applications for facilities miles away from the city, and even sought to interfere with Green Valley's financing. The PUC Defendants, for their part, have abetted the Cibolo Defendants' harmful actions by ignoring Green Valley SUD's federal rights that are plainly supreme to state law under the United States Constitution. This suit seeks to remedy and permanently enjoin the unlawful orders from the PUC Defendants in violation of 7 U.S.C § 1926(b) and justly compensate Green Valley SUD for the damage caused to it by the Cibolo Defendants' persistent, years-long effort to sabotage, interfere with, and prevent Green Valley SUD from serving its customers.

### Parties

2.     Plaintiff Green Valley SUD is a special utility district created under the authority of Texas Water Code chapter 65, with its principal place of business in Marion, Guadalupe County, Texas, and with a water and sewer service area covering portions of Guadalupe, Comal, and Bexar Counties. Green Valley SUD was originally incorporated as a Texas water supply corporation in 1964. In 1992, Green Valley SUD was converted to a special utility district operating under chapter 65 of the Texas Water Code, as confirmed by the voters in the district at an election held for that purpose on May 2, 1992.

3.     Defendant City of Cibolo, Texas ("Cibolo" or the "City") is located in Guadalupe and Bexar Counties, was incorporated as a Type A General Law City in 1965, and adopted a

home rule municipal charter on May 24, 2004. The City has been served with citation and appeared.

4.     Defendant Wayne Reed is the City Manager of Cibolo, and he has been sued in his official capacity as such. Mr. Reed may be served with citation at City Hall, 200 South Main Street, Cibolo, Texas, 78108.

5.     Defendant Peter Lake in his official capacity is Chairman and Commissioner of the Public Utility Commission of Texas (the "PUC"), and he has been sued in his official capacity as such. Mr. Lake (or his predecessor) has been served with citation and appeared.

6.     Defendant Will McAdams in his official capacity is a Commissioner of the PUC, and he has been sued in his official capacity as such. Mr. McAdams (or his predecessor) has been served with citation and appeared.

7.     Defendant Lori Cobos in her official capacity is a Commissioner of the PUC, and she has been sued in his official capacity as such. Ms. Cobos (or her predecessor) has been served with citation and appeared.

8.     Defendant Jimmy Glotfelty in his official capacity is a Commissioner of the PUC, and he has been sued in his official capacity as such. Mr. Glotfelty may be served with citation at the PUC's business office located at 1701 N. Congress Ave., Austin, TX 78701, or wherever else he may be found within or without the State of Texas.

9.     Defendant Kathleen Jackson in her official capacity is a Commissioner of the PUC, and she has been sued in his official capacity as such. Ms. Jackson may be served with citation at the PUC's business office located at 1701 N. Congress Ave., Austin, TX 78701, or wherever else she may be found within or without the State of Texas.

10.     Defendant Thomas Gleeson in his official capacity is Executive Director of the PUC, and he has been sued in his official capacity as such. Mr. Gleeson (or his predecessor) has been served with citation and appeared.

## Jurisdiction and Venue

11.     This Court has federal question jurisdiction under section 1331 of title 28 of the United States Code because the controversy arises under section 1926 of title 7 of the United States Code, as well as sections 1983 and 1988 of title 42 of the United States Code.

12.     Venue in this Court is proper under section 1391(b)(1)-(2) of title 28 of the United States Code because the Defendants are located within this Court's judicial district, a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred within this Court's judicial district, and a substantial part of the property that is the subject of the action is situated within this Court's judicial district.

## Factual Background

13.     Green Valley SUD provides and makes available water and wastewater service within its certificated service areas. In the early 2000s, Green Valley SUD applied for funding from the United States Department of Agriculture (the "USDA"). In 2003, the USDA funded a forty-year loan of $584,000.00 (the "Federal Loan"). Green Valley SUD's Federal Loan remains outstanding and will remain outstanding for multiple years into the future.

14.     Green Valley SUD provides water service pursuant to its Certificate of Convenience and Necessity ("CCN") No. 10646 duly regulated by the PUC. Pursuant to CCN No. 10646, Green Valley SUD has the exclusive right and mandatory duty to provide water utility service within its certificated water service area.

15.     Green Valley SUD has provided water service within its CCN service area since the 1960s. Historically, there was no demand for wastewater service, generally because the rural

area with the CCN service area lacked the population density typically necessary for a wastewater collection system, resulting in a resident preference for on-site septic instead.

16.    As population increased over the ensuing decades, however, along with approaching suburban development from the City of San Antonio and smaller nearby cities, Green Valley SUD identified the upcoming need for wastewater service within its existing water CCN service area.    As a result, Green Valley SUD began the planning and implementation necessary to provide integrated wastewater service to its existing and future water customers within and throughout its existing water CCN service area.

17.    In October 2005, Green Valley SUD obtained a regional wastewater CCN from the PUC's predecessor state agency, which wastewater CCN was close to coterminous with its existing CCN certificated water service area.    The state-authorized CCN sewer service area covers approximately 76,000 acres, or 118 square miles.    Green Valley SUD provides and makes available wastewater service pursuant to its CCN No. 20973, which is now regulated by the PUC.    Pursuant to CCN No. 20973, Green Valley SUD has the exclusive right and mandatory duty to provide wastewater utility service within its certificated wastewater service area.

18.    In 2006, Green Valley SUD prepared a "Wastewater Master Plan" with an engineering firm.    The objective of this Wastewater Master Plan was to analyze Green Valley SUD's existing conditions, estimate future wastewater demands, evaluate opportunities to utilize existing area wastewater service providers, estimate proposed infrastructure costs, and recognize long-term wastewater opportunities.    Green Valley SUD's Wastewater Master Plan began the long-term planning, engineering, permitting, and construction processes necessary to develop wastewater capability to provide and make service available within Green Valley's wastewater CCN service area.

19.     Following the development of its Wastewater Master Plan, Green Valley began a lengthy period of planning, engineering, and implementation of the Wastewater Master Plan to provide and make service available to its wastewater CCN service area. The next phase of Green Valley's multi-year effort to establish a regional wastewater system involved the design, permitting, and construction of the Santa Clara Regional Wastewater Treatment Plant ("Santa Clara Regional WWTP"). The Santa Clara Regional WWTP would serve a substantial portion of Green Valley SUD's wastewater CCN service area and bring wastewater service to an entire area that had never previously been served.

20.     One of the crucial steps forward involved Green Valley's purchase of the land for the Santa Clara Regional WWTP. In 2014, Green Valley SUD purchased approximately 65 acres of land as the location for the Santa Clara Regional WWTP. The land for the Santa Clara Regional WWTP is located on the south side of Interstate Highway 10, near the intersection of Linne Road, near Santa Clara Creek.

21.     In April 2015, after a comprehensive planning and design process, Green Valley SUD applied to the Texas Commission on Environmental Quality (the "TCEQ") for a Texas Pollutant Discharge Elimination System ("TPDES") permit to authorize the discharge of treated domestic wastewater from the Santa Clara Regional WWTP.

22.     In October 2015, the TCEQ's Executive Director issued a draft TPDES permit to Green Valley SUD. The draft permit issued by the TCEQ Executive Director was significant because it was a formal indicator that the TCEQ technical and legal staff had reviewed Green Valley SUD's TPDES permit application and determined that it complied with all applicable TCEQ rules and regulations.

23.     The City of Cibolo has neither the legal right nor the ability to provide wastewater service to the property where the Santa Clara Regional WWTP is located.  Nevertheless, in an act that plainly interfered with Green Valley's provision of service within its wastewater service area, Cibolo protested Green Valley SUD's TPDES application, resulting in years of delay and harm to Green Valley SUD and its customers.  The reason for Cibolo's protest of a facility outside the Cibolo city limits and utility service area quickly became apparent.

24.     On March 3, 2016, while Cibolo's protest against Green Valley SUD's application for a TPDES permit was pending before the TCEQ, Cibolo filed an application with the PUC to take over a large swath of Green Valley SUD's sewer CCN No. 20973 (the "Disputed Tracts").  The Disputed Tracts were not owned by Cibolo, but rather were annexed by Cibolo while owned by third parties.  The Disputed Tracts were properly certificated to Green Valley SUD by the PUC for both water and wastewater service continuously from the date Green Valley SUD obtained its wastewater CCN in 2005 through the date of Cibolo's application with the PUC, but Cibolo's municipal limits expanded to include the Disputed Tracts.  The Disputed Tracts could readily be served by Green Valley SUD's Santa Clara Regional WWTP.

25.     On April 22, 2016, Green Valley SUD filed a motion to intervene in the PUC's proceedings on Cibolo's application under Texas Water Code § 13.255, and Green Valley SUD was allowed to participate as a party by the PUC.  Green Valley SUD provided clear notice to both the Cibolo Defendants and to the PUC that Green Valley SUD was a federally indebted utility entitled to the protection of 7 U.S.C. § 1926(b) and that decertification of Green Valley SUD's federally-protected service area would violate supreme Federal law.

26.     On May 27, 2016, Green Valley filed this federal lawsuit against the City of Cibolo.  However, the district court declined to apply the protections of federal law to Green

Valley's wastewater services because Green Valley's Federal Loan funded only water facilities. The district court dismissed Green Valley's lawsuit on October 3, 2016. That ruling was eventually reversed on appeal. On August 2, 2017, the Fifth Circuit unanimously held that Green Valley's wastewater service area was entitled to the protections of 7 U.S.C. § 1926(b). *See Green Valley Special Utility District v. City of Cibolo*, 866 F.3d 339 (5th Cir. 2017), *cert. denied*, 139 S. Ct. 783 (2019).

27.     However, such holding did not deter the Cibolo Defendants from seeking the decertification at the PUC, nor did it cause the PUC Defendants to halt the decertification process or to observe supreme Federal law. On January 10, 2018, the PUC issued its final Order in the proceedings on Cibolo's application for single certification. The PUC ordered the Disputed Tracts, consisting of 1,694 acres, removed from Green Valley SUD's wastewater CCN No. 20973 despite having conducted no proceedings on whether Green Valley SUD made service available to the Disputed Tracts, and despite the fact that no owner of any of the Disputed Tracts had requested wastewater service from Green Valley SUD. Importantly, Green Valley SUD provides the water service CCN for all of the "Disputed Tracts" and provides water service to all such tracts that have actually requested service. No contested case hearing was held on the issue of Green Valley's federal loan or the issue of whether Green Valley made service available for purposes of § 1926(b), nor was any discovery allowed on those issues.

28.     On March 6, 2018, Green Valley SUD timely filed an administrative appeal of the PUC's January 2018 order in Travis County District Court. The Texas Water Code provides that the state court administrative appeal is a "de novo" review, rendering the PUC's various "findings" legally both a nullity and irrelevant. That state court lawsuit is presently abated as this federal suit moves forward.

29.    Cibolo sought United States Supreme Court review of the Fifth Circuit's holding regarding the scope of Green Valley's federal protections.  On January 7, 2019, the Supreme Court denied Cibolo's petition for writ of certiorari.  On June 21, 2019, back in this Court, Green Valley amended its pleadings to add the PUC Defendants as parties and defendants.

30.    Meanwhile, despite the opposition by Cibolo, after a lengthy contested case, the TCEQ granted Green Valley SUD's TPDES application and, on July 25, 2018, issued a permit for Green Valley SUD's Santa Clara Regional WWTP.  However, the Cibolo Defendants did not cease their efforts to impede Green Valley from providing and making wastewater service available.  Cibolo sued to invalidate the Green Valley's TPDES permit for the Santa Clara Regional WWTP.  Cibolo lost that lawsuit, and the TCEQ has since renewed Green Valley's permit.

31.    Defendant City of Cibolo is a competing city utility that wants to "skim the cream" of its competitor's protected service territory.  Cibolo has never sought to, nor is it capable of, providing wastewater utility service to the entire 118 square miles of service area in Green Valley SUD's wastewater CCN.  Instead, Cibolo wants to cherry-pick the densest, most profitable wastewater service areas in Green Valley SUD's wastewater service area for itself— though it has no lines or facilities in the service area it wants to poach from Green Valley SUD— while providing no wastewater service of any kind to the remaining roughly 75,000 acres of Green Valley's CCN area.  Cibolo's utility operations personnel have acknowledged Cibolo's inability to serve the poached tracts in response to service inquiries from potential developers of those poached tracts.

32.    In addition to interfering in the process relating to Green Valley SUD's TPDES permit for the purposes of delay, inflicting unnecessary cost and expense, and preventing Green

Valley SUD from implementing its long-term wastewater treatment plans, Cibolo has also attempted to interfere in Green Valley SUD's application for additional federal funds in the form of a loan from the United States Department of Agriculture, Rural Development (the "USDA") for the purposes of obtaining additional funding for both water and wastewater operations. Cibolo, despite being a stranger to the loan application and having no direct interest in the loan application process, intentionally interfered with Green Valley SUD's loan application to the USDA by delivering written communications to the USDA objecting to the issuance of the new loans to Green Valley SUD and alleging that the loans should not be approved and issued on numerous spurious and irrelevant bases. Cibolo's purpose, of course, was to continue its attempts to frustrate Green Valley SUD's compliance with its CCN obligations and potentially prevent Green Valley SUD from supplying water and wastewater service in its CCN area. Cibolo's ultimate goal in interfering with Green Valley SUD was to obtain portions of Green Valley SUD's CCN area for itself and harm its competitor.

33.    Cibolo has and continues to unreasonably delay and outright deny final plat approval for subdivisions in Cibolo's extraterritorial jurisdiction that are solely within Green Valley SUD's CCN and which are under contract for Green Valley SUD to provide wastewater service, thus interfering with Green Valley SUD's contractual obligations. Developers have been required to file suit to force Cibolo to approve these plats that comply with all applicable state and local legal requirements. As pretext for its refusal to approve these legal plats, Cibolo has relied on the pretext that temporary transport of sewage by "pump and haul" to Green Valley SUD's treatment facilities pending final extension of wastewater collection lines to the subdivision poses a health concern while Cibolo has simultaneously conducted identical pump and haul operations to subdivisions within its corporate limits. Implicitly recognizing that it has

no authority to regulate such pump and haul activity outside of its corporate limits, Cibolo has unsuccessfully petitioned both the Texas Commission on Environmental Quality and Guadalupe County to prohibit pump and haul operations. Those attempts having failed, Cibolo adopted a discriminatory ordinance and revisions to its development code to prohibit the use of Cibolo streets by pump and haul vehicles only when the sewage originates or is ultimately delivered for treatment outside of the Cibolo corporate limits but placing no such restriction on pump and haul operations that originate within the city limits. Moreover, Cibolo interfered with Green Valley SUD's financing for its wastewater collection lines through lobbying the Texas Water Development Board to reject Green Valley SUD's loan application, leading to extensive delays in financing approval and causing Green Valley SUD to incur significant additional costs associated with protracted temporary pump and haul operations.

34.     Cibolo's efforts to sabotage and interfere with Green Valley's wastewater service to its customers in its federally-protected service area were plainly designed to impede and harm Green Valley so that Cibolo could poach Green Valley's wastewater service area for itself, along with the customers and revenues from those areas. Green Valley has suffered damages as a result of the delay, expense, increased construction costs, lost customers, and lost revenues attributable to Cibolo's interference with Green Valley's federally-protected water and wastewater utility service area.

35.     Despite Cibolo's sabotage, delaying tactics, and interference with Green Valley SUD's provision of wastewater service to its customers, Green Valley SUD is, and has been, providing and making available retail wastewater service within its certificated wastewater service area.

36.     In the past few years, Green Valley SUD received requests for wastewater service from real estate developers for multiple residential subdivisions in the vicinity of the Disputed Tracts.    Green Valley SUD prepared and communicated plans for the provision of the wastewater retail service that was requested for all such developments. The developers agreed to the plans, and today, Green Valley SUD is providing active retail wastewater service to those residential developments. Green Valley SUD's provision of retail wastewater service to those developments continues to expand in accordance with the timing needs of those developments. All homeowners in these residential subdivisions are receiving retail water and wastewater service from Green Valley SUD. There are Green Valley SUD-owned wastewater pipes and facilities in the ground throughout these subdivisions.

37.     To serve certain of those developments, Green Valley SUD purchased a long-term contractual right for treatment capacity at San Antonio River Authority's currently-operating WWTP. To utilize these long-term contractual rights, Green Valley SUD owns active, operational wastewater collection pipes and related wastewater infrastructure to provide retail wastewater service to existing customers and to provide capacity for future retail customers as the need arises. Initially, sewage effluent collected at the subdivisions was collected in a storage tank for pump-and-haul to the San Antonio River Authority WWTP. That interim step is now complete, as the wastewater effluent flows through a trunk line to the San Antonio River Authority WWTP. Green Valley SUD has recently amended its agreement with the San Antonio River Authority to secure capacity for an additional 700 homes in that area.

38.     Similarly, Green Valley SUD provides retail wastewater service to a major manufacturing facility in the same vicinity as the Disputed Tracts. In response to Guadalupe Valley Development Corporation's ("GVDC") request for service, Green Valley SUD responded

that it would have wastewater service available to meet the developer's capacity needs at the time of development. GVDC initially attempted to switch to Cibolo for wastewater service but later reversed course (when GVDC realized that Cibolo has no wastewater service capability in the vicinity) and agreed to obtain wastewater service from Green Valley SUD. That property is now owned by AW Texas (not GVDC). Green Valley SUD is now providing, and has successfully provided, wastewater service to the AW Texas property within the time-period requested. There are Green Valley SUD-owned pipes in the ground providing service to this industrial property. Wastewater from the AW Texas property is treated at Green Valley's Santa Clara Regional WWTP.

39. The AW Texas facility is connected to and serviced by Green Valley SUD's TCEQ-permitted Santa Clara Regional WWTP. The Santa Clara Regional WWTP plant is fully operational, and the TCEQ has already issued a renewal TPDES permit for the facility. Prior to that WWTP going online, Green Valley SUD paid for upgrades to the City of Marion's WWTP and a long-term contractual right for treatment capacity, for any wastewater treatment needed prior to the completion of the Santa Clara Regional WWTP. Now, sewage effluent from the AW Texas property flows through a trunk line to the Green Valley SUD WWTP, making the interim step of pump-and-haul no longer needed.

40. Meanwhile, multiple developments north and northwest of the AW Texas property, and nearby the Disputed Tracts, have requested wastewater service from Green Valley SUD. There are Green Valley SUD-owned pipes in the ground and thousands of homes (EDUs) under contract with Green Valley SUD. Cibolo, by contrast, has no ability to serve those developments or the Disputed Tracts.

41.     Green Valley SUD operates its water and wastewater utilities as an integrated utility system. This integrated system is operated by the same employees, controlled by the same board of directors, managed by the same general manager, and funded from the same operating account. Green Valley SUD does not maintain separate financial accounts for water and wastewater. There are efficiencies created by combining water and wastewater services within the same area. Water flowing from a faucet involves water utility service, but as soon as that water hits the drain it switches to wastewater utility service. Preservation of Green Valley SUD's wastewater service area safeguards the financial security of Green Valley SUD's entire utility system, which in turn encourages Green Valley SUD to invest in both its water and wastewater facilities throughout its service area.

42.     Green Valley SUD has not refused retail wastewater service to any landowner within its certificated wastewater service area. No landowner within the service area has requested wastewater service from Green Valley SUD and yet been unable to obtain wastewater service. Green Valley SUD has never been found by any regulatory authority to have failed to provide continuous and adequate wastewater service in its CCN service area. To the contrary, Green Water SUD was, is, and remains willing and able to provide retail wastewater service throughout its service area.

## Claims

43.     7 U.S.C. § 1926(b) provides protection to recipients of federal funds under 7 U.S.C. § 1926(a). Section 1926(b) provides as follows:

**Curtailment or limitation of service prohibited**. The service provided or made available through any [federally-indebted] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan....

7 U.S.C. § 1926(b).

44. Section 1926(b) "prevents local governments from expanding into a rural water association's area and stealing its customers." *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 705 (6th Cir. 2003). The Cibolo Defendants' sabotaging, harmful, and interfering actions toward Green Valley were, and continue to be, plainly part of its plan to steal Green Valley SUD's customers. It is undisputed that Cibolo's application to the PUC to decertify Green Valley SUD's was filed when (1) Green Valley SUD was a properly indebted association under the USDA's funding authority provided by 7 U.S.C. § 1926(a), and (2) Green Valley SUD had the legal right to provide wastewater service to the Disputed Tracts. Yet, in violation of § 1926(b), the Cibolo Defendants encroached on and curtailed Green Valley SUD's wastewater area in violation of Green Valley's federal rights under § 1926(b).

45. It is further undisputed that the PUC Defendants' January 2018 order was entered at a time when (1) Green Valley SUD was a properly indebted association under the USDA's funding authority provided by 7 U.S.C. § 1926(a) and (2) Green Valley SUD had the legal right to provide wastewater service to the Disputed Tracts. Yet, in violation of § 1926(b), the PUC Defendants acted to curtail Green Valley SUD's wastewater service area in favor of the municipality Cibolo, based on the Disputed Tracts having been "incorporated or annexed by" Cibolo. *See* TEX. WATER CODE § 13.255(a).

46. The PUC's order violates § 1926(b) because Green Valley SUD has adequate facilities to provide service to the Disputed Tracts within a reasonable time after a request for service is made. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 477 (5th Cir. 2020) (establishing the "physical ability" test for purposes of § 1926(b)).

47.     First, it is a prerequisite to a federally-indebted utility's failing the physical ability" test that a "request for service," in fact, have first been "made." *See id.* No property owner on the Disputed Tracts has made a request for wastewater service to Green Valley SUD. Because Green Valley SUD has not received a request for wastewater service on the Disputed Tracts, the PUC Defendants were barred under federal law from decertifying the Disputed Tracts from Green Valley SUD's wastewater CCN in favor of the municipal corporation Cibolo.

48.     Second, even if Green Valley SUD's utility's service area could be curtailed in an area where there has been no request made to the utility for service (it cannot under the express terms of the Fifth Circuit's "physical ability" test), Green Valley SUD cannot be so curtailed because it had and has nearby infrastructure and facilities that are more than adequate to provide service to the Disputed Tracts within a reasonable time after some hypothetical request for service might be made.     Green Valley SUD provides and makes available both water and wastewater service throughout its certificated service area.

49.     Green Valley SUD has not refused retail wastewater service to any landowner within its certificated wastewater service area who has requested wastewater service.     No landowner within the service area has requested wastewater service from Green Valley SUD and yet been unable to obtain wastewater service.     Green Valley SUD was, is, and remains willing and able to provide retail wastewater service to the Disputed Tracts just like the rest of Green Valley SUD's CCN service area.

50.     In the event a request for wastewater service for any of the Disputed Tracts or any other property in their vicinity were to be made to Green Valley SUD, Green Valley SUD has adequate facilities to provide wastewater service to any such property within that area within a reasonable time of such request.     Green Valley SUD has infrastructure in the ground nearby the

Disputed Tracts to provide wastewater service to the Disputed Tracts. To the extent additional infrastructure would need to be built, Green Valley SUD could timely make pump-and-haul service available and thereby provide active retail wastewater service to the Disputed Tracts as soon as it was needed while any additional permanent infrastructure was being built.

51.    The developments to which Green Valley SUD is providing active, pipes-in-the-ground retail wastewater service confirm the adequacy of Green Valley SUD's facilities to provide wastewater service to the Disputed Tracts within a reasonable time of any request for such service. For every property that has requested wastewater service within Green Valley SUD's wastewater CCN area, Green Valley SUD has provided wastewater service at the level and within the timeframe requested by the property owner. Green Valley SUD can do the same for any property within the Disputed Tracts.

52.    For the requests for service received by Green Valley SUD from residential subdivision developers southwest of the Disputed Tracts, Green Valley SUD worked with the subdivision developers to create a plan for the type, level, and timing of service. Such residential subdivisions were and are to be built over time with phased development. For the existing developments, Green Valley SUD contracted with San Antonio River Authority to purchase treatment capacity to accommodate the initial phase of development. Green Valley SUD's collection lines and wastewater infrastructure serve every home in those subdivisions. Green Valley SUD also built a larger wastewater main to connect to San Antonio River Authority. That process has now been completed in some of the residential subdivisions served by Green Valley SUD, and others are in the same process.

53.    "Pump-and-haul" service is common practice and widely-accepted in the wastewater utility business, including by the City of Cibolo. When a "pump-and-haul" method

is used, a homeowner's wastewater typically drains through collection pipes belonging to the utility into a storage vault in the neighborhood from which the utility pumps and hauls the wastewater. "Pump-and-haul" wastewater service is typically an interim stage in development, followed by the construction of larger transmission mains that connect to the local collection lines, thereby bypassing the storage vault, and providing direct transport to a regional wastewater treatment facility. Green Valley SUD is willing and able to provide retail wastewater service to the Disputed Tracts via pump-and-haul service as system build-out proceeds, just as it has done and will do with many of the existing and pending real estate developments in the area.

54. The AW Texas property (formerly owned by GVDC) involved very specific, high-capacity, non-standard service needs requested in connection with a manufacturing facility. AW Texas also had specific needs on the timing of service. That service request was different from that of a residential subdivision developer and especially that of rural homeowners. Green Valley SUD had adequate facilities to provide service to the area within a reasonable time after a request for service is made, and Green Valley SUD's provision of that service was request-specific, just as it would be on the Disputed Tracts. As with the residential subdivisions, Green Valley SUD employed pump-and-haul service as construction of the Santa Clara Regional WWTP continued.

55. Green Valley SUD has numerous methods of timely providing service in accordance with the nature of a request received for wastewater service. Green Valley SUD has one operational wastewater treatment plant and has applied to the TCEQ for a second wastewater treatment plant. Green Valley SUD has wholesale wastewater capacity agreements with other wastewater treatment plants that provide additional treatment resources and flexibility. Green Valley SUD has existing contracts and relationships in place to provide and make available

wastewater service to its retail customers pending the installation of infrastructure to deliver wastewater to either of Green Valley SUD's wastewater treatment plans via pipes in the ground. If wastewater service is needed prior to the installation of the required infrastructure, Green Valley SUD can and will provide such service in the interim by means of a pump-and-haul system in conjunction with contractual rights to capacity at the City of Marion wastewater treatment plant or the San Antonio River Authority wastewater treatment plant.

56.     Accordingly, pursuant to 42 U.S.C. § 1983 and/or equity, Green Valley SUD seeks to permanently enjoin the PUC Defendants' and the Cibolo Defendants' unlawful deprivation of Green Valley SUD's rights under federal law, and pursuant to 42 U.S.C. section 1988, Green Valley SUD further seeks an award of its attorneys' fees, expenses, and costs incurred in pursuing this action.

57.     The PUC's January 2018 order wrongfully curtailed Green Valley SUD's service area and transferred it to Cibolo. Green Valley SUD has been deprived of the customers and revenues to support Green Valley SUD's wastewater service in its service area, and to repay its Federal Loan. These deprivations are irreparable, shrinking Green Valley SUD's service area. As a result of the PUC Defendants' decertification of such property, Green Valley SUD has and will continue to lose significant annual revenues.

58.     The Cibolo Defendants have wrongfully taken Green Valley SUD's wastewater service area for the Disputed Tracts. The Cibolo Defendants have also indicated an intention to take additional certificated service area away from Green Valley SUD on other properties that are properly certificated to Green Valley SUD, and to replace Green Valley SUD as the provider of wastewater service within those other properties.

59.     Safeguarding Green Valley SUD's financial security by protecting Green Valley SUD's wastewater service area would protect the security of the USDA's Federal Loan to Green Valley SUD.     The PUC Defendants' curtailment and limitation of Green Valley SUD's wastewater service area has the potential to harm Green Valley SUD's ability to repay the Federal Loan, regardless of how the funds from the Federal Loan were actually spent, and regardless of the scope of the USDA's security interest. While the USDA's remedy for a loan default—the security interest—may be limited to water revenues, Green Valley SUD's payments on the Loan can come from any revenues—including wastewater revenues—and thus a curtailment of Green Valley SUD's wastewater service area equates to a curtailment or impairment of the security for the Federal Loan.  Moreover, the reduction of Green Valley SUD's wastewater service area can be expected to impair Green Valley SUD's ability to obtain federal financing under § 1926 in the future.

60.     The PUC Defendants and the Cibolo Defendants, on and after the date of Green Valley SUD's indebtedness, are violating and are continuing to violate Green Valley SUD's rights under 7 U.S.C. § 1926(b) by seeking to curtail or limit the service provided or made available through Green Valley SUD by inclusion of the Disputed Tracts within the boundaries of Cibolo. The actions of the PUC Defendants and the Cibolo Defendants impermissibly curtail and limit Green Valley SUD's federally protected service area.  As a result of the conduct of the PUC Defendants and the Cibolo Defendants, Green Valley SUD is being deprived of its right to non-encroachment, non-curtailment, and non-limitation under 7 U.S.C. § 1926(b) and is in danger of permanently losing property from its service area along with the associated revenue stream derived therefrom.

61.     The PUC Defendants and the Cibolo City Manager are engaging in such deprivation of rights secured by federal law under color of state law by way of their adherence to Texas Water Code section 13.255(b)-(c) in violation of 7 U.S.C. § 1926(b).

62.     7 U.S.C. § 1926(b) preempts any conflicting state law and must be enforced pursuant to the Supremacy Clause of the United States Constitution.

63.     Pursuant to 42 U.S.C. § 1983, 7 U.S.C. § 1926(b), and 28 U.S.C. § 2201, Green Valley SUD requests that the Court declare the continuing conduct of the PUC Defendants and the Cibolo Defendants unlawful and issue the Court's permanent injunction prohibiting the PUC Defendants' curtailment of Green Valley SUD's service—and the Cibolo Defendants' provision of service—in violation of Green Valley SUD's rights under 7 U.S.C. § 1926(b).

64.     Pursuant to 42 U.S.C. section 1988, Green Valley SUD seeks an award of its attorneys' fees, expenses, and costs incurred in this action.

65.     Green Valley SUD also seeks to recover its damages from the Cibolo Defendants incurred as a result of the Cibolo Defendants' interference efforts against Green Valley SUD's provision of wastewater service, which conduct was done in violation of 7 U.S.C. § 1926(b) and Green Valley SUD's federal civil rights under 42 U.S.C. § 1983. Such efforts and conduct include decertification proceedings before the PUC, state courts, and federal courts; federal loan interference before the USDA; WWTP permit interference before the TCEQ and state courts; and interference with developments that would provide wastewater revenues to Green Valley. But for the Cibolo Defendants' plans and efforts to decertify property from Green Valley SUD's wastewater service area in violation of § 1926(b), Green Valley SUD would not have had to incur any of those out-of-pocket expenses and other delay-related harm and damages.

66.     Green Valley SUD also seeks to recover as damages any revenues received by the Cibolo Defendants relating to the provision of retail wastewater service within the Disputed Tracts. Any such revenues would have been received by Green Valley SUD but for the Cibolo Defendants' attempts to decertify the Disputed Tracts from Green Valley SUD's wastewater service area in violation of § 1926(b).

## **PRAYER**

WHEREFORE, Plaintiff Green Valley Special Utility District respectfully prays for the entry of judgment against Defendants and in favor of Plaintiff Green Valley Special Utility District as follows:

A.     Permanent mandatory injunctive relief requiring Peter Lake, Will McAdams, Lori Cobos, Jimmy Glotfelty, Kathleen Jackson, and Thomas Gleeson (or their successors), in their official capacities as Officials of the Public Utility Commission of Texas, to re-certify into Plaintiff Green Valley Special Utility District's CCN No. 20973 the property decertified therefrom in PUC Docket No. 45702;

B.     Permanent injunctive relief prohibiting Peter Lake, Will McAdams, Lori Cobos, Jimmy Glotfelty, Kathleen Jackson, and Thomas Gleeson (or their successors), in their official capacities as Officials of the Public Utility Commission of Texas, from disallowing Plaintiff Green Valley Special Utility District to provide wastewater service to any of the properties that were decertified from Plaintiff's certificated wastewater service area in PUC Docket No. 45702, absent further order by the Public Utility Commission of Texas in a separate docket;

C.     Permanent injunctive relief prohibiting Peter Lake, Will McAdams, Lori Cobos, Jimmy Glotfelty, Kathleen Jackson, and Thomas Gleeson (or their successors), in

their official capacities as Officials of the Public Utility Commission of Texas, from permitting or authorizing any entity other than Plaintiff Green Valley Special Utility District to provide wastewater service to any of the properties that were decertified from Plaintiff's certificated wastewater service area in PUC Docket No. 45702, absent further order by the Public Utility Commission of Texas in a separate docket;

D. Permanent injunctive relief prohibiting Peter Lake, Will McAdams, Lori Cobos, Jimmy Glotfelty, Kathleen Jackson, and Thomas Gleeson (or their successors), in their official capacities as Officials of the Public Utility Commission of Texas, from again decertifying, pursuant to Texas Water Code section 13.255(b)-(c), those properties that were decertified from Plaintiff's certificated wastewater service area in PUC Docket No. 45702, for so long as any of Plaintiff's federal loans remain outstanding, absent a request for wastewater service to Plaintiff from the owner of one or more of those properties that Plaintiff fails to satisfy;

E. Permanent injunctive relief prohibiting Wayne Reed (or his successor), in his official capacity as City Manager of the City of Cibolo, Texas, from permitting or authorizing the City of Cibolo, Texas, to provide wastewater service to any of the properties that were decertified from Plaintiff Green Valley Special Utility District's certificated wastewater service area in PUC Docket No. 45702, absent further order by the Public Utility Commission of Texas in a separate docket;

F. Permanent injunctive relief requiring forfeiture of any wastewater facilities the Cibolo Defendants have constructed, own, or operate on, under, or in Plaintiff Green Valley Special Utility District's CCN No. 20973, which includes the

property decertified therefrom in PUC Docket No. 45702, and further compelling the Cibolo Defendants to convey any and all such facilities to Plaintiff Green Valley Special Utility District;

G.     An award to Plaintiff Green Valley Special Utility District of all damages against the Cibolo Defendants under section 1983 and equity;

H.     An award to Plaintiff Green Valley Special Utility District of its attorneys' fees, expenses, and costs pursuant to 42 U.S.C. section 1988, including post-judgment interest thereon;

I.     An award to Plaintiff Green Valley Special Utility District of its costs of court; and

J.     An award to Plaintiff Green Valley Special Utility District of all other and further legal and/or equitable relief to which it is justly entitled.

Respectfully submitted,

By: _____

Paul M. Terrill, III
State Bar No. 00785094
Ryan D. V. Greene
State Bar No. 24012730
TERRILL & WALDROP
810 W. 10th Street
Austin, Texas   78701
(512) 474-9100
(512) 474-9888 (fax)
pterrill@terrillwaldrop.com
rgreene@terrillwaldrop.com

ATTORNEYS FOR GREEN VALLEY
SPECIAL UTILITY DISTRICT

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2022, Plaintiff's Third Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service and/or via electronic mail.

John R. Hulme
Erin K. Snody
OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, TX 78711-2548

*Attorneys for Defendant PUC Officials*

Lowell F. Denton
Megan R. Santee
DENTON NAVARRO ROCHA BERNAL HYDE & ZECH
2517 N. Main Avenue
San Antonio, Texas 78212

*Attorneys for Defendant City of Cibolo and its City Manager*

_____
Paul M. Terrill